3:20-mj-275

<p style="text-align:center; color:red; font-size:1.5em;">**SEALED**</p>

DISTRICT OF OREGON, ss:                    AFFIDAVIT OF BRADLEY DIXON

### Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Bradley Dixon, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I have been employed as a Special Agent by the Drug Enforcement

Administration (DEA) since February of 2017.  My current assignment is at the Portland District

Office where I am assigned to a DEA Federal Task Force Group.  My formal law enforcement

training includes successfully completing the 18-week DEA basic training course at the DEA

academy in Quantico, Virginia.  Since then, I have participated in dozens of drug investigations

involving controlled purchase operations, vehicle tracking, cell phone geo-location techniques,

cell-site simulators, pen register/trap and trace orders, and Title III wiretaps.  I have interviewed

and operated informants, executed search warrants, arrested and interviewed subjects, conducted

physical surveillance, and utilized electronic and video surveillance.  I have also worked with

and consulted numerous agents and law enforcement officers who have investigated drug

trafficking.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for

**John Lee McLaughlin ("McLaughlin"), Armando Martinez Canchola ("Canchola"),** and

**Taryn Robin Coleman ("Coleman")** for (i) possession with intent to distribute over 19,000

grams of methamphetamine and over 3,000 grams of heroin, in violation of Title 21 of the

United States Code, Section 841(a)(1); and (ii) maintaining a drug-involved premises in violation

of Title 21 of the United States Code, Section 856; and for **Coleman** for possession with intent to

distribute approximately 84.4 gross grams of fentanyl in violation of Title 21 of the United States

code, Section 841(a)(1).

**Applicable Law**

4.     Title 21 USC Section 841(a)(1) makes it illegal to posses controlled substances –
including methamphetamine, heroin, and fentanyl – with the intent to distribute them.  Title 21
USC 856 makes it illegal to maintain a drug-involved premises.

**Cooperating Defendant Information**

5.     Cooperating Defendant 1 ("CD1") referenced in this affidavit is providing
information to the DEA in hopes of receiving a reduced sentence on pending drug-related
charges.  CD1 is a convicted felon and has a criminal history involving arrests and/or convictions
for various drug and non-drug related crimes from 2002 to 2020, including manufacturing,
possession, and delivery of controlled substances, fraudulent use of credit cards, theft, larceny,
criminal mischief, probation violations, traffic offenses, burglary, possession of firearms, assault,
DUI, escape, reckless driving, forgery, and eluding.  CD1 has demonstrated significant
knowledge of drug trafficking trends, including distribution methods, communications methods,
and current drug pricing, which I know to be true based on my own training and experience.
CD1 has also provided information about individuals currently suspected of drug trafficking that
has been independently corroborated by Investigators, as detailed herein.  I believe CD1's
information is true and reliable to the extent it has been independently corroborated, as detailed
herein.  I have been intentionally vague about CD1 and CD1's information in an effort to conceal
his/her identity for his/her safety.

6.     Cooperating Defendant 2 (hereinafter "CD2") referenced herein has been
providing information to law enforcement since early 2020.  C2 has provided credible
information that has led to successful drug investigations and has either been corroborated by, or

was otherwise known to law enforcement.  CD2 has been arrested for unlawful possession and delivery of heroin and for being a felon in possession of a firearm.  CD2 is providing information to law enforcement in hopes of receiving reduced sentencing on these charges.  CD2 has prior convictions for possession of a forged instrument, identity theft, telephonic harassment, criminal mischief, fraudulent use of a credit card, theft in the second degree, interfering with a peace officer, possession of methamphetamine, and unauthorized use of a motor vehicle.  I have been intentionally vague about CD2's information in an effort to conceal his/her identity for his/her safety.

## Statement of Probable Cause

### *Background of the Investigation*

7.        In November 2020, DEA Portland Investigators met with CD1.  CD1 admitted to his/her involvement in large-scale methamphetamine distribution involving several other people.  CD1 identified two of these people as John **McLaughlin** ("**McLaughlin**") and "Armando," whose last name is unknown to CD1.  CD1 said **McLaughlin** has used multiple phones, and provided a recent phone number for **McLaughlin** as 971-252-8610 ("**McLaughlin**'s Phone").  CD1 said Armando uses phone number 916-712-1688 ("**Canchola's** Phone") to facilitate the Target Offenses.  Open-source records checks through Thompson Reuters Clear's Reverse Phone Gateway returned **Canchola's** Phone as being associated with Becky Saelee ("Saelee").  As detailed below, Investigators have since confirmed "Armando" to be Armando Martinez **Canchola** ("**Canchola**").

8.        CD1 said **Canchola** is a truck driver who travels up and down Interstate-5 between California and Oregon, and transports large quantities of methamphetamine and heroin

for further distribution in Oregon.  CD1 indicated that **Canchola** sometimes uses a passenger

vehicle and sometimes transports the drugs in his truck, and has brought his girlfriend to

transactions in the past.  The girlfriend's name is unknown to CD1.  CD1 said **Canchola** supplies

methamphetamine and heroin to **McLaughlin**.  CD1 said he/she observed **Canchola** deliver

several pounds of methamphetamine and heroin to **McLaughlin** within the last month of writing

this affidavit.  CD1 said that the transaction took place at a hotel where **Canchola** delivered the

drugs.  CD1 said the drugs were opened and weighed, and **McLaughlin** then exchanged a large

quantity of cash for the drugs.  CD1 said this is typical of transactions with **McLaughlin**, who

CD1 said regularly distributes drugs out of hotels.  CD1 provided the prices that were paid by

**McLaughlin** to **Canchola** for the heroin and methamphetamine during the recent transaction,

which I know to be consistent with current drug pricing.[1]  Based on my training, experience, and

knowledge of drug trafficking trends, distribution, and pricing, I believe CD1's information

about the prices paid for the drugs are consistent with current drug pricing, and **Canchola's**

method of drug transportation is consistent with current drug trafficking trends.

9.      Following the meeting with CD1, Investigators queried law enforcement records

for **McLaughlin** and **Canchola**.  Investigators learned that **McLaughlin** was a suspect in a DEA

Salem (Oregon) investigation, and CD2 has previously purchased methamphetamine from

**McLaughlin**, including as recently as late September 2020.  The transaction took place at a hotel

parking lot where CD2 met with **McLaughlin** while standing at the rear of his BMW X5.  Salem

investigators later obtained a search warrant authorizing the installation and monitoring of a GPS

---

[1] I have been intentionally vague about the total quantities of drugs and drug proceeds exchanged in an effort to keep the CD1's identity confidential, as I know cooperation with law enforcement can result in danger for someone who cooperates with law enforcement.

vehicle tracker on **McLaughlin**'s BMW X5, which warrant is still authorized until December

2020.  The controlled purchase from **McLaughlin** was arranged through consensual calls from

CD2 to **McLaughlin** via **McLaughlin**'s Phone.  **Canchola** does not have a criminal record.

**McLaughlin** is a convicted felon and has a significant criminal history for drug and non-drug

related crimes from 1996 to 2020, including a recent conviction for unlawful delivery of heroin

in 2017 for which **McLaughlin** was sentenced to 37 months in prison.  I believe this

corroborates CD1's information that **McLaughlin** is involved in drug distribution.

      10.     I then reviewed call-detail (toll) records for **Canchola's** Phone, which included

basic location information for **Canchola's** Phone during times incoming and outgoing

communications were made via **Canchola's** Phone.  I learned that **Canchola's** Phone was in

regular contact with **McLaughlin**'s Phone, which is consistent with CD1's information

indicating **McLaughlin** sources drugs from **Canchola**, as I know drug distribution is typically

arranged through communications over cellphones.

      11.     I then reviewed the call-detail records, which also provided information about the

general location of devices making incoming and outgoing calls to and from **Canchola's** Phone,

as well as the general location of **Canchola's** Phone during those communications.  The location

data indicated that **Canchola's** Phone regularly sends and receives communications while being

located in both Oregon and California since at least August 2020.  Additionally, the location data

indicated that **Canchola's** Phone has been located in both California and Oregon when in

communications with **McLaughlin**'s Phone.  I believe this is consistent with CD1's information

indicating **Canchola** regularly travels from California to Oregon with drugs.  Furthermore, I

know this travel pattern – consistent travel between California and Oregon – is consistent with

**Page 5 – Affidavit of Bradley Dixon**              **USAO Version Rev. April 2018**

drug trafficking trends, as drugs found in Oregon are typically imported from Mexico into

California before subsequent transportation to Oregon in vehicles through the Interstate-5

corridor.  Based on this, and CD1 and CD2's information, I believe that **Canchola's** contacts

with **McLaughlin** while located in California, and then Oregon, indicates **Canchola** maintains

contact with **McLaughlin** about his transporting of drugs from California to Oregon for

distribution in Oregon, specifically to **McLaughlin**.

      12.     On November 18, 2020, I reviewed wire transfer records associated with

**Canchola's** Phone and observed a wire transfer on March 13, 2020 that listed **Canchola's** Phone

as the sender phone, and "*Armando* Martinez **Canchola**" as the sender.  Based on CD1 saying

"Armando" uses **Canchola's** Phone, and wire transfer records listing "*Armando* Martinez

**Canchola**" as being associated with **Canchola's** Phone, I believe **Canchola** is the user of

**Canchola's** Phone.

      13.     On November 19, 2020, I applied for and obtained federal search warrants to

collect and monitor the geolocation of both **Canchola's** Phone and **McLaughlin**'s Phone for a

period of 30 days.  Upon execution of the warrant and initial collection of geolocation data, I

learned that **McLaughlin**'s Phone was no longer in service.  However, **Canchola's** Phone

remained active.

      14.     On November 21, 2020, I reviewed the geolocation data for **Canchola's** Phone,

which indicated **Canchola's** Phone began travelling from California to Oregon on the evening of

November 20, 2020, and stopped for a period of time in southern Oregon on November 21, 2020.

I continued to monitor the geolocation of **Canchola's** Phone, which indicated **Canchola's** Phone

then travelled up Interstate-5 toward northern Oregon.  I learned that, around 7:12 p.m.,

**Canchola's** Phone was near a Best Western Hotel located at 16105 SW Pacific Hwy, Tigard, Oregon 97224.

### *Search of Hotel Room, Seizure of Methamphetamine and Heroin, and Arrest of McLaughlin, Canchola, and Coleman*

15.      Investigators subsequently went to the Best Western Hotel and, upon arriving, observed **McLaughlin**'s BMW X5 to be parked near the front entrance.  I then entered the Best Western Hotel and an authorized employee provided me with the guest roster.  I observed that "Armando Martinez [**Canchola**]" had checked into Room 330 with Becky Saelee, who, according to open-source records, is the name associated with **Canchola's** Phone.

16.      Investigators subsequently established surveillance of the Room 330.  Shortly thereafter, Investigators observed **Coleman** exit the room.  Investigators detained **Coleman** and asked her to sit on a chair in the lobby.  At this time, Investigators observed her appear to adjust the chair cushion.  Investigators later searched under the cushion and found a small amount of suspected fentanyl (weighing approximately 49.6 gross grams with packaging) and MDMA (Ecstasy), and the **Coleman** admitted to stashing the drugs under the cushion.  Investigators also found a small green sunglasses case on a nearby chair, which **Coleman** later admitted in a post-Miranda statement was hers.  Investigators located and found additional suspected fentanyl pills (weighing approximately 34.4 gross grams with packaging) and a small amount of methamphetamine (weighing approximately 31.3 gross grams with packaging) inside the sunglasses case.  At the time of locating the drugs, Investigators were unsure what the fentanyl was, but, *McLaughlin* later said it was fentanyl pills that had melted together. A phot of suspected fentanyl pills Colman hid under the cushion is depicted below:



17.    Based on the **Coleman** departing Room 330 with drugs, CD1's information that **Canchola** transports drugs from California to Oregon for further distribution to **McLaughlin** at hotels, and locating **McLaughlin**'s BMW X5 in the parking lot of the while **Canchola's** Phone was physically located within the area of the hotel after travelling from California, Investigators believed a drug transaction was taking place inside Room 330.

18.     Investigators subsequently obtained a key to Room 330 from an authorized hotel employee and approached the Room 330 door.  Investigators knocked loudly on the door and announced "Police!"  At this time, Investigators could hear whispers from behind the door. Investigators again knocked, then used the key card to attempt open the door, which was latched shut from the inside.  Investigators were unable to open the door.  Saelee eventually opened the door, and, upon doing so, Investigators saw into the room.  Inside, Investigators saw Saelee, **Canchola**, and **McLaughlin**, and packages of suspected methamphetamine in plain view from

the hallway. Investigators demanded Saelee, **Canchola**, and **McLaughlin** exit Room 330.
They did so and were detained in handcuffs without incident. Investigators then entered Room
330 to conduct a safety sweep and ensure no other persons or imminent danger were present.
During the safety sweep, I observed significant quantities of suspected methamphetamine and
cash, as well as scales, open and in plain view. A photo of the room is depicted below:



Upon completing the safety sweep, Investigators exited Room 330 and maintained security from outside Room 330.

19.     Investigators then conducted post-Miranda interviews of **Canchola**, **McLaughlin**, and **Coleman**.  **McLaughlin** said there was approximately 40 pounds of methamphetamine, 4 kilograms of heroin, and $100,000 cash inside Room 330 that he was purchasing from **Canchola**, and that the cash was proceeds from **McLaughlin's** drug sales.  **Canchola** said he was just the "hotel guy" and that people unknown to him from Los Angeles, California delivered the drugs to him.  **Coleman** said she stopped by to visit **McLaughlin** and eat tacos.  **Coleman** also admitted to attempting to hide the drugs that were later found in the chair and green sunclasses case as described above.  **Coleman** said she is on federal probation stemming from prior drug charges.  **McLaughlin** said the blue pills (suspected fentanyl) found after **Coleman** tried to hide them are fentanyl pills.

20.     Investigators then applied for and obtained a federal search and seizure warrant authorizing Investigators to search Room 330.  Then, in the early hours of November 22, 2020, Investigators entered Room 330 and searched it pursuant to the warrant.  During the search, Investigators located and seized over 19,000 grams of methamphetamine and over 3,000 grams of heroin.  The methamphetamine later field tested positive for methamphetamine, and the heroin later field tested positive for heroin.  The suspected fentanyl pills were not tested due to safety precautions.  All drugs will be sent to a DEA lab for further testing.

21.     On November 22, 2020, **McLaughlin**, **Canchola**, and **Coleman** were arrested and booked into the Multnomah County Detention Center pending the filing of this complaint.

## Conclusion

22.     Based on the foregoing, I have probable cause to believe, and I do believe, that **McLaughlin**, **Canchola**, and **Coleman** committed: (i) possession with intent to distribute over 19,000 grams of methamphetamine and over 3,000 grams of heroin, in violation of Title 21 of the United States Code, Section 841(a)(1); and (ii) maintaining a drug involved premises, in violation of Title 21 of the United States Code, Section 856.  I also believe **Coleman** committed possession with intent to distribute approximately 84.4 gross grams (with packaging) of fentanyl. I therefore request that the Court issue criminal complaints and arrest warrants for **McLaughlin**, **Canchola**, and **Coleman** for these violations.

23.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrants were all reviewed by Assistant United States Attorney (AUSA) Paul Maloney, and AUSA Maloney advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrants.

/ / / /

/ / / /

/ / / /

## Request for Sealing

24.     It is respectfully requested that the Court issue an order sealing, until further order

of the Court, all papers submitted in support of the requested criminal complaint and arrest

warrants.  I believe that sealing these documents is necessary because the information to be

seized is relevant to an ongoing investigation, and any disclosure of the information at this time

is likely to seriously jeopardize the ongoing investigation. Premature disclosure of the affidavit,

the criminal complaint, and the arrest warrants may adversely affect the integrity of the

investigation.


*/s/ Sworn to by telephone*
*In accordance with Fed. R. Crim. P. 4.1*
Bradley Dixon
DEA Special Agent

Sworn to by telephone at ___3:08___ a.m./p.m. this ___22nd___ day of November 2020 in
accordance with Fed. R. Crim. P. 4.1.


_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Page 12 – Affidavit of Bradley Dixon**                    **USAO Version Rev. April 2018**